UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AHMAD SAMEEM SHAMAL,

                         Petitioner,

-vs-

WILLIAM P. BARR, ATTORNEY GENERAL
OF THE UNITED STATES, et al.,

                         Respondents.

DECISION and ORDER

19-CV-6375 CJS

---

## INTRODUCTION

Petitioner Ahmad Sameem Shamal ("Shamal") has been in custody since October 14, 2018, when he was detained by United States Immigration and Customs Enforcement ("ICE"). Now before the Court is Shamal's petition for habeas corpus pursuant to 28 U.S.C. § 2241, alleging that his prolonged detention by Respondents is in violation of 8 U.S.C. § 1231 and the Fifth Amendment to the United States Constitution. Pet., May 20, 2019, ECF No. 1. In addition, Shamal asks this Court to order his immediate release from custody due to the COVID-19 pandemic. Mot., Apr. 20, 2020, ECF No. 8. For the reasons set forth below, Shamal's petition for habeas corpus [ECF No. 1] and his application for immediate release [ECF No. 8] are denied.

## BACKGROUND

Shamal, a native and citizen of Afghanistan, entered the United States at Forth Worth, Texas, on August 28, 2018. Pet. at ¶ 7, 12. Shamal is a pilot in the

Afghan military and came to this country on a non-immigrant visa to train with the United States Air Force. Pet. at ¶ 13; Decl. of Keith Oliveri[1], Aug. 29, 2019, ECF No. 5-1 ("Oliveri Decl."). On October 13, 2018, Shamal failed to report for training and the Air Force declared him absent without leave. Oliveri Decl. at ¶ 6. On October 14, 2018, Shamal was detained by the U.S. Border Patrol at the Mountain Mart Gas Station in Moers, New York. Oliveri Decl. at ¶ 7. Shamal admitted to the agent that he had intended to enter Canada illegally to claim asylum. *Id.*

On October 14, 2018, Shamal was served with a Notice to Appear that charged him with being subject to removal pursuant to 8 U.S.C. § 1227(a)(1)(C)(i), as a nonimmigrant who has failed to maintain or comply with the conditions of the nonimmigrant status under which he was admitted. Oliveri Decl. at ¶ 8. That same day, DHS determined that the petitioner would be detained in DHS custody pending a determination in his immigration case. Oliveri Decl. at ¶ 9.

At Shamal's request, DHS's custody determination was reviewed by an Immigration Judge ("IJ"), who found Shamal to be a flight risk and denied bond. Oliveri Decl. at ¶ 9–11. Following the IJ's determination, Shamal – through counsel – submitted to DHS a request for administrative bond or release on alternatives to detention. Oliveri Decl. at ¶ 12. This request was denied. *Id.* Shamal then appealed

---

[1] In his sworn declaration, Oliveri states that he is "employed by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), as a Deportation Officer at the Buffalo Federal Detention Facility . . . ." Oliveri Decl. at ¶ 1. He also states that he has "reviewed files and information maintained by [ICE] pertaining to" Shamal, and is therefore familiar with the facts and circumstances of this case. *Id.* at ¶ 2. Further, Oliveri's declaration was supported by several exhibits, including copies of Shamal's Notice to Appear, the IJ's decision denying bond, and the Board of Immigration Appeals' ("BIA") decision affirming the IJ's bond determination. Ex. 1–2 and A–B, Aug. 29, 2019, ECF No. 5-2.

the IJ's bond decision to the Board of Immigration Appeals ("BIA"). Oliveri Decl. at ¶ 11. The BIA affirmed the IJ's determination that Shamal presented a flight risk, and dismissed Shamal's appeal. Oliveri Decl. at ¶ 16.

While the appeal of his bond determination was in process, an IJ heard Shamal's application for relief from removal. Oliveri Decl. at ¶ 14. At the conclusion of Shamal's hearing on April 8, 2019, the IJ denied Shamal's application and ordered his removal from the United States to Afghanistan. Shamal appealed the IJ's decision, and it appears from Shamal's docket with the Second Circuit, that the BIA affirmed the IJ's decision on September 13, 2019, and that Shamal then appealed to the Second Circuit. *Shamal v. Barr*, 19-3236 (2d Cir.), Opp. Mot. Stay, 12–15, Oct. 10, 2019, ECF No. 12. The Second Circuit has not issued a stay of removal in Shamal's case. *Shamal v. Barr*, 19-3236 (2d Cir.).

In May 2019, Shamal filed *pro se* in this Court a petition for habeas corpus pursuant to 28 U.S.C. § 2241. His motion in this Court in April 2020 for immediate release due to the COVID-19 pandemic was likewise filed *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations and internal quotation marks omitted).

## THE HABEAS PETITION

28 U.S.C. § 2241(c)(3) provides that a district court may grant a writ of habeas corpus within its jurisdiction to prisoners who are "in custody in violation of the

Constitution or laws or treaties of the United States." In his petition, Shamal asserts that his continued detention contravenes 8 U.S.C. § 1231(a)(6) and violates his substantive and procedural due process rights under the United States Constitution. Pet. at ¶ 33–40. Therefore, Shamal asks the Court to order his immediate release from custody.

## STATUTORY BASIS FOR SHAMAL'S DETENTION

At the outset, the Court must consider the statutory basis for Shamal's detention. Whether Shamal's detention is governed by 8 U.S.C. § 1226 ("§ 1226") or 8 U.S.C. § 1231 ("§ 1231") may impact on whether he is entitled to relief and, if so, the form of that relief. *Enoh v. Sessions*, 236 F. Supp. 3d 787, 791 (W.D.N.Y. 2017), *appeal withdrawn*, No. 17-1236, 2017 WL 6947858 (2d Cir. Dec. 7, 2017).

The distinction between the two statutes comes down to an alien's status in relation to the removal period. § 1226 governs the arrest and detention of aliens prior to issuance of a final order of removal. § 1226(a) provides that "the Attorney General . . . (1) may continue to detain the arrested alien; [or] (2) may release the alien on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole . . . ."

If, prior to a final order of removal, the Attorney General elects to detain the alien under § 1226, the alien may request a bond hearing before an Immigration Judge. *Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016), citing 8 C.F.R. § 1236.1(d)(1). Once the alien has had his bond hearing, § 1226(a) does not require any additional bond hearings. *See Hemans v. Searls*, No. 18-CV-1154, 2019 WL 955353,

at *3 (W.D.N.Y. Feb. 27, 2019) (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 847–848 (2018) ("*Jennings* strongly implies that § 1226(a) cannot be read to include other significant procedural protections in order to avoid constitutional concerns.")). Further, no time limitation has been applied to the detention of aliens under § 1226 because the detention has "a definite termination point"—i.e., upon completion of the administrative removal proceedings and the issuance of a final order of removal. *Thompson v. Lynch*, No. 16-CV-6608 (CJS), 2017 WL 344970, at *6 (W.D.N.Y. Jan. 24, 2017) (quoting *Demore v. Kim*, 538 U.S. 510, 529 (2003)).

§ 1231, on the other hand, governs the detention of aliens during and after the ninety-day "removal period." § 1231(a)(1)(B) provides that an alien's "removal period" begins at the latest of the following events:

(i) The date the order of removal becomes administratively final;

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order;

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Hechavarria v. Sessions,* 891 F.3d 49, 55 (2d Cir. 2018), *as amended* (May 22, 2018) (quoting 8 U.S.C. § 1231(a)(1)(B)). Under 8 C.F.R. § 1241.1(a), "[a]n order of removal made by the immigration judge . . . shall become final . . . [u]pon dismissal of an appeal by the Board of Immigration Appeals . . . ." Detention during the ninety-day removal period is mandatory. § 1231(a)(2). Thereafter, the Attorney General is authorized to continue detention of certain aliens who are determined by the Attorney General "to be a threat to the community or unlikely to comply with the order of

5

removal . . . ." § 1231(a)(6).

In the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001), "the Supreme Court was presented with the challenge of reconciling [§ 1231's] apparent authorization of indefinite post-removal order detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process." *Diaria v. Sessions*, No. 17-CV-6028 (CJS), 2018 WL 3429270, at *2–3 (W.D.N.Y. July 16, 2018). The Supreme Court determined that § 1231(a) authorizes detention after a final order of removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699–700.

Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure the alien's removal, the Supreme Court adopted a period of six months "for the sake of uniform administration in the federal courts . . ." *Id.* at 701. The Supreme Court also explained what ought to happen after the six-month period has expired:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. *See also Nunez v. Searls*, No. 18-CV-6463 (CJS), 2019 WL 2524308, at *2 (W.D.N.Y. June 19, 2019); *Quinglin Zeng v. Sessions*, No. 17-CV-6334 (CJS), 2017

6

WL 3582439, at *3 (W.D.N.Y. Aug. 18, 2017).

In the instant case, the IJ issued a final order of removal against Shamal, and that order was affirmed by the BIA on September 13, 2019. *Shamal v. Barr*, 19-3236 (2d Cir.), ECF No. 12. Further, as of the date of this decision, the Second Circuit has had over six months to grant Shamal a stay of removal and has not done so.[2] *Id*. Consequently, the Court finds that as of September 13, 2019, Shamal is an alien subject to a final order of removal whose detention is governed by 8 U.S.C. § 1231.

## ANALYSIS

With respect to the merits of Shamal's claims, the Court finds no violation of 8 U.S.C. § 1231 or of Shamal's due process rights, as Shamal has failed to show that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 699–700. Although Shamal makes much of the period of his detention, he does not present any evidence of obstacles to his removal should the Second Circuit deny his appeal. Indeed, because Shamal's removal has been delayed by his own actions in pursuit of relief through administrative proceedings and the federal courts, neither his detention pending the circuit court's final ruling, nor its duration, can be found to constitute a violation of Shamal's due process rights. *See*

---

[2] "In the Second Circuit, the government has put in effect a policy of forbearance. Under this policy, the government will not remove an alien while a petition for review is pending before the Second Circuit . . . . District courts in this Circuit are divided as to whether the mere filing of a motion for a stay of removal, when combined with the forbearance policy, serves to toll the removal period and thus locate the movant within § 1226 rather than § 1231." *Argueta Anariba v. Shanahan*, 190 F. Supp. 3d 344, 348–349 (S.D.N.Y. 2016) (citing *In re Immigration Petitions for Review Pending in the U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir.2012)). This Court has previously found that the Second Circuit's forbearance policy does not toll the removal period. *Narain v. Searls*, 19-CV-6361 (CJS), 2020 WL 95425, at *3 (W.D.N.Y. Jan. 8, 2020). *See also, Matthews v. Philips*, No. 13-CV-339-JTC, 2013 WL 5288166, at *3 (W.D.N.Y. Sept. 18, 2013) (finding that filing in the Second Circuit "did not undo the fact that there was a final removal order in place . . . .")).

*Flores v. Holder*, 977 F.Supp.2d 243 (W.D.N.Y. June 7, 2013) (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that his prolonged detention violates substantive due process)).

Alternatively, even if Shamal was currently being detained pursuant to § 1226, which was the case at the time this petition was filed, there is likewise no merit to his claim that his continued detention is a due process violation.  As discussed above, § 1226(a) authorizes the detention of an alien pending a decision on removability.  Provided the alien has received a bond hearing before an IJ, the alien may be detained if the Attorney General determines the alien is a risk to the community or unlikely to comply with the order of removal.  *See Hemans*, 2019 WL 955353 at *3.  In the present case, the IJ determined after a hearing that Shamal presented a flight risk, and the BIA dismissed Shamal's appeal of the IJ's determination.

Lastly, with respect to Shamal's motion for emergency release due to the COVID-19 pandemic, the Court notes that Shamal cites no legal authority by which the Court may order his release.  Mot., Apr. 20, 2020, ECF No. 8.  In the face of the current pandemic, some district courts have ordered detainees to be released pursuant to the court's inherent power to grant bail to habeas petitioners with "substantial claims" and in "extraordinary circumstances," as recognized by the Second Circuit in *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001).  *See, e.g., Avendano Hernandez v. Decker*, No. 20-CV-1589 (JPO), 2020 WL 1547459, at *2 (S.D.N.Y. Mar. 31, 2020; *Savino v. Souza*, No. CV 20-10617-WGY, 2020 WL 1703844 (D. Mass. Apr.

8, 2020). However, as noted above, Shamal does not have a substantial habeas claim. Hence, the Court is constrained to deny Shamal's motion for emergency release.

## CONCLUSION

Based upon the foregoing, the Court finds that Shamal has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241. Accordingly, it is hereby

ORDERED, that Petitioner's application for a writ of habeas corpus [ECF No. 1] is denied; and it is further

ORDERED, that Petitioner's motion for emergency release [ECF No. 8] is denied.

The Clerk of Court is directed to terminate this action. SO ORDERED.

Dated:    May 6, 2020
          Rochester, New York           ENTER:


                                        *Charles J. Siragusa*
                                        CHARLES J. SIRAGUSA
                                        United States District Judge